NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

22-P-576                                          Appeals Court

COMMONWEALTH  vs.  GREGORY J. SALVATORE.

No. 22-P-576.

Bristol.     October 2, 2023. – December 14, 2023.

Present:  Green, C.J., Milkey, & Grant, JJ.

Criminal Harassment.  Probable Cause.  Practice, Criminal,
     Complaint, Dismissal.


     Complaint received and sworn to in the Attleboro Division of the District Court Department on October 5, 2021.

     A motion to dismiss was heard by Edmund C. Mathers, J.


     Stacey L. Gauthier, Assistant District Attorney, for the Commonwealth.
     Robert M. Strasnick for the defendant.


     MILKEY, J.  The defendant was charged in the District Court with one count of criminal harassment, G. L. c. 265, § 43A (a). The alleged victim, SJ, was the current boyfriend of the defendant's former girlfriend.  SJ initiated the prosecution by filing an application for a criminal complaint pursuant to G. L. c. 218, § 35A.  A clerk-magistrate held two show cause hearings,

at one of which SJ provided extensive testimony that served to supplement his application.  Satisfied that probable cause existed, the clerk-magistrate issued the complaint.  The defendant then moved to dismiss it pursuant to Commonwealth v. DiBennadetto, 436 Mass. 310, 313 (2002).  A District Court judge allowed that motion after agreeing with the defendant that the information within the four corners of SJ's application did not establish probable cause.  On the Commonwealth's appeal, we conclude that the probable cause analysis should have taken into account SJ's testimony at the show cause hearing, which was sufficient to establish probable cause.  We therefore reverse.

Background.  In his handwritten application for a criminal complaint, which he submitted pro se, SJ alleged that the defendant had harassed him in various respects on multiple occasions.  SJ specifically alleged that on one date, the defendant had stood in front of his (SJ's) car while taking photographs of the car and its license plate.[1]  The remaining allegations involved the defendant's targeting of SJ through SJ's employer's social media account.  In some of his postings, the defendant specifically called SJ a "child abuser" and "child alienator."  The primary focus of the concern that SJ expressed

---

[1] The defendant and his ex-girlfriend had a son together. The incident in which the defendant stood in front of SJ's car occurred after the son's soccer game that all three adults attended.

was potential damage to his reputation.  However, he also described the defendant's actions as "a continuous and deliberate attempt to damage [SJ's] relationship with [his] girlfriend," and an "escalating pattern of behavior" that was causing him "substantial emotional distress."

On May 21, 2021, the clerk-magistrate held a show cause hearing at which SJ testified at length and was represented by counsel.  From the record before us, it appears that no assistant district attorney was present at the show cause hearing.  The defendant was present and represented by counsel at the hearing, but he did not testify.  The testimony SJ provided was consistent with the statements he had made in his application, albeit with significant additional detail.  For example, SJ testified about social media postings that the defendant had made that described SJ as a "beta male" and "pathetic creature" who displays "weakness in his eyes" and "cowers" behind his girlfriend.  SJ recounted that on one occasion, the defendant posted a comment that a fact finder could find particularly menacing:  "I keep begging the universe not to push me."

In describing the defendant's escalating behavior, SJ also testified that -- after he and his girlfriend had moved to a new town -- the defendant's postings indicated that he was physically present in that town.  As SJ put it:  "he was never

here before, and now he's here, again, nearly every single day." Such postings appeared with great frequency, by SJ's count, over 170 times in "a little over [sixty] days." According to SJ, he and his girlfriend "feel like [they're] confined to [their] home." While SJ acknowledged on cross-examination that the defendant's postings did not include threats of physical harm, he testified that he "suffer[s] [from] significant amounts of emotional distress," as well as "anxiety, fear, [and] embarrassment."

A follow-up show cause hearing was held on September 10, 2021, although no additional testimony was taken at that time. Based on what had been presented to him, the clerk-magistrate issued a criminal complaint charging the defendant with one count of harassment in violation of G. L. c. 265, § 43A (a). In completing the form on which SJ's application was filed, the clerk-magistrate checked the box that indicated that there was "TESTIMONY RECORDED," and he noted that a recording was available through the court's "For the Record" (FTR) recording system.

When the defendant moved to dismiss the complaint pursuant to DiBennadetto, he was represented by the same attorney who had appeared at the show cause hearings. Nevertheless, his counsel did not provide the judge with a transcript of the show cause hearings, or even mention that the clerk-magistrate had heard

testimony. Instead, he asked the judge to determine probable cause based on the four corners of SJ's application. The assistant district attorney present at the hearing on the motion to dismiss -- who up to that point had had no apparent involvement in the matter -- orally opposed the motion, but did not file a written opposition. The assistant district attorney did not point out to the judge that the clerk-magistrate had heard SJ's testimony before finding probable cause, but instead asked the judge to determine probable cause based on the information set forth within the four corners of SJ's application, as defense counsel had.

The hearing on the motion to dismiss was extremely brief, amounting to fewer than seven pages of transcript. At the conclusion of the hearing, the judge ruled that SJ's application failed to establish probable cause that the defendant had committed criminal harassment, and he dismissed the complaint from the bench. The judge's comments at the hearing indicate that he reasoned that the actions and statements that SJ ascribed to the defendant in the application either were protected speech or did not otherwise cross the line into criminal conduct, however annoying they might be.[2]

---

[2] Specifically, the judge stated the following:

"I agree that the harassment and the context of the statute and the harassment prevention order statute is a sort of

Discussion. 1. The proper record. We initially address the procedural question of whether the judge examined probable cause based on the correct record. The Commonwealth argues that the judge erred when he looked only to the information within the four corners of SJ's application and did not consider the testimony that SJ had provided at the show cause hearing. While acknowledging that the assistant district attorney should have brought SJ's testimony to the judge's attention, the Commonwealth asserts that the judge on his own should have known that a show cause hearing had been held and that it had been recorded. See Boston Globe Media Partners, LLC v. Chief Justice of the Trial Court, 483 Mass. 80, 81 (2019) (requiring that show

---

narrow definition of harassment; there are lots of vi[le], unwelcome, uncalled for communications that are protected under our First Amendment, and I agree with counsel that the allegations here do not rise to the level of fighting words. The standing in front of a vehicle and taking pictures, I suppose if it were a situation where they couldn't get away, i.e., they were boxed in and they started to become concerned for their safety, that would be one thing, but that's not the description; it's just obnoxiously standing in front of the vehicle and taking a picture of the license plate.

"The affidavit describes conduct that could be actionable in a civil session. It could give rise to a complaint for defamation or tortious in[ter]ference with contractual relations by going to the website of his employer. There's all sorts of avenues on the civil side that these allegations would give rise to. But it's a much different playing field on the criminal side, and I find that these allegations do not rise to even a probable cause level of criminal harassment; therefore, the defendant's motion is allowed."

cause hearings be recorded). Moreover, as noted, the papers before the judge in fact indicated that there was testimony available through the FTR system. In response to the Commonwealth's argument that the judge resolved the issue of probable cause based on the wrong record, the defendant asserts that the Commonwealth waived this argument by failing to raise it at the hearing on the DiBennadetto motion.

Without either party having supplied the relevant transcripts to him, the judge was not in a position to consider SJ's testimony unless he sua sponte retrieved, and listened to, the FTR recordings. Especially when we consider the hectic reality of District Court motion practice, we assign minimal fault to what the judge did here. After all, he provided the litigants precisely what they both asked for: a decision on probable cause based on the information in the four corners of SJ's application.

Nevertheless, we agree with the Commonwealth that, where a clerk-magistrate has found probable cause after hearing a complainant's testimony, a DiBennadetto motion ordinarily should be reviewed based on a record that includes such testimony.[3] And

---

[3] Of course, in many instances, there may be little difference between the information provided in the application for the complaint and the testimony at a show cause hearing. This is especially true in the context of an application for a criminal complaint submitted by a police prosecutor, where the testimony, if any, often adopts, or repeats, what is said on the

although the Commonwealth bears some of the responsibility for misdirecting the judge's focus, the defendant was the moving party who was challenging the clerk-magistrate's decision and whose counsel had been present at the show cause hearings. As such, the defendant was the one who bore the ultimate responsibility for putting before the judge a complete record of the evidence considered by the clerk-magistrate, including transcripts or recordings of the show cause hearings. Under these circumstances, we conclude that the Commonwealth did not waive the issue.[4]

---

papers. See generally standards 3:00, 3:04, 3:06, 3:07, 3:09, and 3:10 of the District Court Standards of Judicial Practice: The Complaint Procedure (Oct. 2008) (noting that process that applies to applications for criminal complaints filed by private complainants can be considerably different in practice than that for those filed by law enforcement officers). In the context of an application filed by a police prosecutor, we stated in dicta in Commonwealth v. Bell, 83 Mass. App. Ct. 61, 63 (2013), that a DiBennadetto motion is to be heard based on the four corners of the application and any attachments thereto such as police reports, unless the Commonwealth consents otherwise.

[4] Commonwealth v. Black, 403 Mass. 675 (1989), a case that predates DiBennadetto, is not to the contrary. The defendant there had been charged with violating a law that banned the use of steel jaw leghold animal traps. Id. at 676. In his motion to dismiss, the defendant argued that the type of trap he had used -- described as a "soft catch trapping system" -- was not covered by the statute. Id. at 676-677. After examining the trap and the affidavits submitted by the parties, the judge agreed and dismissed the complaint. Id. On appeal, the Commonwealth argued that the judge could not have dismissed the complaint without a full evidentiary hearing. Id. The court rejected that argument because the Commonwealth had expressly agreed not to call witnesses at the hearing. Id. at 677-678. But it is one thing for the Commonwealth to argue on appeal that

The question remains how to proceed from here.  One option would be to remand the matter to the District Court for the judge to reconsider the DiBennadetto motion based on the transcripts of the show cause hearings.  However, those transcripts are now before us, and the question of probable cause is one of law.  With the underlying merits having been fully briefed by the parties, we exercise our discretion to reach them ourselves.

2.  The merits.  The test for whether a criminal complaint is supported by probable cause is not a rigorous one.  See Commonwealth v. Bell, 83 Mass. App. Ct. 61, 63 (2013).  It "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Id., quoting Commonwealth v. Gallant, 453 Mass. 535, 541 (2009). "All that is required is 'reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that the defendant had committed . . . an offense" (citations omitted).  Bell, supra.  Applying this standard to SJ's

---

probable cause should have been determined based on evidence that was never presented, and quite another to argue, as here, that probable cause should have been determined based on what was before the clerk-magistrate.  Of course, nothing we say should be read as preventing the Commonwealth from stipulating that the production of a transcript of a show cause hearing is unnecessary.  Cf. Mass. R. A. P. 8 (b) (1) (B), as appearing in 481 Mass. 1611 (2019).

testimony, we conclude that there was probable cause to support the clerk-magistrate's issuance of the complaint here.

By statute, criminal harassment is defined as follows: "willfully and maliciously engag[ing] in a knowing pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress."  G. L. c. 265, § 43A (a).  Case law has interpreted the "pattern of conduct or series of acts" language as requiring three separate incidents of harassing conduct.  See Commonwealth v. Welch, 444 Mass. 80, 89-90 (2005).

On the facts present here, little discussion is necessary with respect to the existence of probable cause for many of the required elements of the offense.  For example, we agree with the Commonwealth that SJ's testimony readily established probable cause that the defendant's conduct was "willful[]" and "malicious[]," because "[t]he self-evident purpose of [the defendant's] behavior was to distress [SJ]."  The facts also readily established probable cause that a reasonable person targeted by the defendant's behavior would be seriously alarmed and suffer substantial emotional distress.[5]

---

[5] The Supreme Judicial Court has defined "substantial emotional distress" as more than "merely trifling or passing" and "markedly greater than . . . commonly experienced as part of ordinary living."  Commonwealth v. Robinson, 444 Mass. 102, 108

As the judge appears to have identified, any doubt about probable cause emerges because of the complicated interplay between the criminal harassment statute and protections afforded to individuals by the First Amendment to the United States Constitution. See Commonwealth v. Bigelow, 475 Mass. 554, 558-572 (2016) (interpreting and applying criminal harassment statute in light of First Amendment concerns). See also O'Brien v. Borowski, 461 Mass. 415, 421-429 (2012) (same with respect to parallel civil harassment prevention statute). While G. L. c. 265, § 43A (a), "is a statute directed at a course of conduct," the Supreme Judicial Court has held that it "unquestionably . . . reaches speech," provided that the speech is constitutionally unprotected. Bigelow, supra at 559.

In our view, at least when SJ's testimony is considered, there was probable cause that the defendant had engaged in at least three incidents of criminal harassment, notwithstanding the judge's concerns about the defendant's rights under the

---

(2005). The record supports the conclusion that the defendant's repetitive public online targeting of SJ caused SJ to experience significant distress, and a fact finder at trial could conclude that such distress was reasonable. See, e.g., Commonwealth v. Paton, 63 Mass. App. Ct. 215, 221 (2005) (defendant's "interference with [victim's] work and normal activities" caused victim reasonable and substantial emotional distress).

First Amendment.[6]  Notably, some of the defendant's conduct at
issue involved his actions rather than speech, such as standing
in front of SJ's car while photographing it.[7]  See Commonwealth
v. Robinson, 444 Mass. 102, 108 (2005) (relying on defendant's
use of his car to block victim's access to road as one of
requisite incidents of harassment).  And to the extent that the
complaint depends on statements that the defendant directed at
SJ on social media, it is important to view those statements in
the context of the defendant's conduct at the time they were
made, including the defendant's indication of his ubiquitous
physical presence in the town where SJ lived.  See Bigelow, 475
Mass. at 567-570 (mailing of disturbing letters to wife of
selectman at her home sufficient to support conviction of
criminal harassment).  Based on the content, frequency,
duration, and escalating obsessiveness of the defendant's

_____

[6] In light of our conclusion, we need not decide whether the
information within the application for the criminal complaint on
its own established probable cause.

[7] The judge concluded that the defendant was not blocking
SJ's exit but "just obnoxiously standing in front of the
vehicle."  That assessment amounts to fact finding that is not
appropriate at this preliminary stage of the proceedings.  A
fact finder at trial might eventually view the defendant's
standing in front of the car in the same de minimis way that the
motion judge did.  For purposes of assessing probable cause,
however, the facts are to be viewed in the light most favorable
to the Commonwealth.  See Commonwealth v. Geordi G., 94 Mass.
App. Ct. 82, 85 (2018).

statements, a fact finder could view them as objectively threatening and, as such, unprotected speech.[8]  See id.  In addition, any false accusations that SJ was a child abuser would be unprotected by the First Amendment.[9]  See id. at 566 (noting that defamatory speech is unprotected).  See also Commonwealth v. Johnson, 470 Mass. 300, 309-310 (2014) (relying on false accusation of child abuse as one of three acts supporting conviction of criminal harassment).  As the Supreme Judicial Court has made clear, even "in a prosecution for criminal harassment under § 43A based solely on a defendant's speech, if

---

[8] This conclusion is not negated by the fact that SJ admitted on cross-examination that the defendant's postings did not threaten him with physical harm.  For one thing, in light of the fact that SJ specifically testified that he felt "fear," his comments about the lack of a physical threat can be viewed simply as acknowledging the undisputed fact that the defendant did not make any overt threats of physical violence.  See O'Brien, 461 Mass. at 424 ("true threat does not require an explicit statement of an intention to harm the victim as long as circumstances support the victim's fearful or apprehensive response" [quotation and citation omitted]).  For another, a fact finder might well conclude that someone in SJ's position might have reason to underplay the extent to which he felt threatened by the defendant.

[9] We acknowledge that the defendant's statement that SJ was a "child abuser" might be viewed in context not as accusing SJ of engaging in physical or sexual child abuse in the usual sense, but as an expression of concern that SJ's relationship with the child's mother might serve to alienate the defendant's child from him, which the defendant considered a form of child abuse.  However, as noted, for purposes of determining probable cause, the judge was required to view the facts in the light most favorable to the Commonwealth.  See Geordi G., 94 Mass. App. Ct. at 85.

it cannot be concluded that, as a matter of law, the speech at issue is constitutionally protected speech, the question whether the speech fits within a category of unprotected speech constitutes a question of fact for the fact finder to decide." Bigelow, supra at 570-571.

Having concluded that the record before the clerk-magistrate established probable cause to believe that the defendant violated the criminal harassment statute, we reverse the order allowing the defendant's motion to dismiss the complaint.

So ordered.